KELLY et al. v. CLOW et al.

(Circuit Court of Appeals, Seventh Circuit. July 26, 1898.)

No. 484.

1. PATENTS—COMBINATION CLAIMS—NOVELTY.

It is not necessary, in order to deprive a combination claim of novelty, that all its elements shall have been used together before, and in the same relation.

2. SAME—INVENTION—COMBINATIONS.

In determining whether a new combination of old elements constitutes invention, the most important and controlling considerations are the intrinsic novelty and utility of the concrete invention.

3. SAME—PRIOR STATE OF THE ART.

In determining the patentability of an alleged invention relating to water-closets of the class denominated "hopper closets," the court is not

necessarily limited, in its consideration of prior patents, to those belonging to that class alone, for all water-closets belong to the same art.

4. SAME—INTERPRETATION OF CLAIMS.

Neither the patentee nor his privies can claim the benefit of rejected claims which he was required to abandon as a condition of the grant. Nor can he claim such a construction of the claims allowed as would be equivalent thereto.

5. SAME—WATER-CLOSETS.

The Smith patent, No. 258,144, for improvements in water-closets, construed, and *held* void as to claims 1, 2, 3, and 5, in view of the prior state of the art, and not infringed as to claim 6.

Appeal from the Circuit Court of the United States for the Northern Division of the Northern District of Illinois.

This appeal is from a decree of the circuit court of the United States for the Northern district of Illinois, dismissing the bill of the above-named complainants against the above-named defendant for the infringement of claims 1, 2, 3, 5, and 6 of letters patent No. 258,144, issued May 16, 1882, to Robert D. O. Smith for certain alleged improvements in water-closets. On December 23, 1895, the patentee, Smith, assigned the entire right, title, and interest in the patent to John Kelly, who, on December 25, 1895, transferred the entire title to Thomas Kelly & Bros., a co-partnership composed of himself and Thomas and James Kelly. On March 30, 1896, the present suit was instituted. The specification divides the water-closets theretofore in use into two classes, as follows: "First, those which employ a small quantity of water, and generally admit the same by means of an automatically slow-closing cock; and, second, those which employ a large quantity of water discharged in a short space of time. These last are flushing closets; and my invention relates particularly to closets of that class, although one part of it may be employed with a slow-closing cock." The patentee, testifying as an expert for the complainants, says: "The term 'slow-closing cock' in the specification refers to slow-closing cocks wherever they had been previously used. They had been almost universally used with pan closets, and occasionally used with hopper closets." These flushing closets are then divided into two classes by the specification, which says, "Sometimes the flush water is contained within the closet, and sometimes it is contained in a cistern hung to the wall overhead." In the patentee's testimony these two classes are referred to as "reservoir closets" and "cisterns or tank closets," respectively. The specification says: "The valve, d, may be a simple puppet valve, which is opened and held open by depression of the seat, or it may be of that variety common in water-closets, which, being pushed open, can only close again slowly, permitting the flow of water to continue during the time occupied in closing." But the preferred form of valve mechanism shown and described in the patent comprises two valves mounted upon a single stem, and so related to each other that when one is seated the other is unseated, the arrangement being such that in one position the water flows from the service pipe into the cistern or reservoir, the passage to the closet being meanwhile closed, and when in the other position the water flows from the cistern or reservoir to the closet, the passage from the service pipe being meanwhile closed. The valve stem extends beyond the end of the casing, and is engaged by an arm, f, which reaches down into the bowl or hopper of the closet, the arm being carried by the rock shaft, w, disposed above the bowl, and provided, upon the outside thereof, with a second arm, y, to which is connected a lever, g, which in turn is borne upon by the seat. The specification, however, says that the invention is not limited to any particular means for actuating the valve stem. It says: "I therefore operate the valve, d, from within the water way by a stem, e, which extends through the discharge opening within the bowl, where it may be operated by a lever, f, or other mechanism attached to or operated by the seat automatically, or by a pull if the automatic action is not desirable. The modes of operating said lever, f, so as to actuate the rod, e, to open the valve, are various, and, while I show and claim that mode which I

deem to be the most desirable under general circumstances, I do not wish to restrict myself thereto, for the reason that the advantage of dispensing with the outside connection with the valve is quite independent of the kind of device employed to operate the inside connection."

The only means shown and described for operating the valve stem when the power is to be derived from the seat is a compound lever, of which three different forms are shown. The specification says: "The same may consist of a compound lever of which a simple and efficient form is shown in Figs. 1, 8, and 9, wherein the seat rests upon one member, g, and the levers, y and f, constitute the other member." The specification also states that: "When the water in the reservoir, l, is under considerable pressure,

Fig. 1.

*Fig. 8*

*Fig. 9*

and the valve, m, is permitted to open, the water nearest the valve will seek instant relief in a sudden and violent jet or spurt, whereas time is required to set the whole body of water in motion. This sudden jet is objectionable, because it makes a splash and splatter. To control this I set the valve, m, back from the outlet, r, so that the first jet is expended in a chamber, o, and the splash is confined within said chamber."

The claims alleged to be infringed are as follows: "(1) In a water-closet or other similar receptacle, a water connection wherein the devices for operating the valve are entirely within the water way, with the valve stem projecting therefrom into the hopper, and actuated from within the hopper itself, substantially as set forth. (2) A valve, d, in the service pipe, combined with a controlling stem, e, entirely within the water way, and a lever, f, within the hopper, to engage with and actuate said stem, and mechanism whereby said lever, f, may be actuated substantially as set forth. (3) In a water-closet or other receptacle, the combination of a stem entirely within the water way and actuating mechanism within the bowl, and a water connection provided with a valve, d, and a valve, m, both mounted on and simultaneously operated by the same stem, and an intermediate reservoir exterior to the closet, as set forth. (5) In a water-closet or other similar receptacle, a service pipe provided with a valve, d, a valve, m, provided with chamber, o, and a valve stem, e, common to both of said valves, combined with a reservoir, l, intermediate between said valves, and a lever, f. actuated by suitable mechanism, as set forth. (6) In a water-closet or other similar receptacle, a water service pipe provided with a valve, d, and its operative stem, located entirely within the water way, combined with the compound lever, whereof one member, f, is within the hopper, a, and the other member is outside of the same."

The answer of the defendant denies invention in view of the prior art, denies infringement, and sets up the following patents as anticipating the complainants' patent, viz.:

No. 10,531, issued to F. H. Bartholomew, February 14, 1854.
No. 21,734, issued to F. H. Bartholomew, October 12, 1858.
No. 26,944, issued to I. Edelman, January 24, 1860.
No. 45,315, issued to W. S. Carr, December 6, 1864.
No. 2,241, reissue, to F. H. Bartholomew, May 15, 1866.
No. 95, 001, issued to George Conron, September 21, 1869.
No. 97,639, issued to Hobson & Middleton, December 7, 1869.
No. 108,378, issued to Morrison & Smith, October 18, 1870.
No. 153,197, issued to John Jones, July 21, 1874.
No. 182,756, issued to H. A. Hangan, October 3, 1876.
No. 194,982, issued to J. R. Adams, September 11, 1877.
No. 202, 193, issued to John Reid, April 9, 1878.
No. 207,615, issued to William McElroy, September 3, 1878.
No. 209,870, issued to John Demarest, November 12, 1878.
No. 216,312, issued to Hugh H. Craigie, June 10, 1879.
No. 226,224, issued to John Demarest, April 6, 1880.
No. 237,609, issued to G. F. Shaffer, February 8, 1881.
No. 244,535, issued to William Blackwood, Jr., July 19, 1881.
No. 244,381, issued to R. P. Daggett, July 19. 1881.
No. 261,358, issued to D. S. Keith, July 18, 1882.
Also the following English patents, viz.:
No. 1,348, issued to Harlow in 1856.
No. 863, issued to Ross in 1857.
No. 1,678, issued to Hardie in 1858.
No. 2,708, issued to Jones in 1863.
No. 1,622, issued to Wilson in 1864.
No. 2,621, issued to Clark in 1867.
No. 3,990, issued to Meakin in 1877.
No. 2,306, issued to Sutherland in 1879.

The file wrapper and contents show that claims 1, 2, 3, 5, and 6, as first presented to the patent office, read as follows: "(1) In a water-closet, or other similar receptacle, a water connection wherein the devices for operating the valve are entirely within the water way, and actuated from within the hopper itself, substantially as set forth. (2) A valve, d, in the service pipe, combined with a controlling stem, e, entirely within the water way, and a lever, f, within the bowl, and mechanism whereby said lever, f, may be actuated, substantially as set forth. (3) In a water-closet or other similar receptacle, a water connection provided with a valve, d, combined with a valve, m, and an intermediate reservoir exterior to the closet, as set forth, whereby a flush of water may be obtained with a small service pipe." (5) In a water-closet or other similar receptacle, a service pipe provided with a valve, d, a valve, m, provided with a chamber, and a valve stem, e, common to both of said valves, and a lever, f, actuated by suitable mechanism as set forth. (6) In a water-closet or similar receptacle, a water service pipe provided with a valve, d, and its operative stem, located entirely within the water way, combined with the compound lever, whereof one member, f, is within the bowl or hopper, a, and the other member is outside of the same."

Of the above claims the first, second, and sixth were rejected upon reference to English patents Nos. 2,306 of 1879 and 2,621 of 1867. The third and fifth claims were rejected on a reference to a patent to Carr, No. 9,480, of December 21, 1852, and a patent to Bartholomew, No. 10,531, February 14, 1854. After various amendments the claims were allowed in the form first above set out. In his letter of December 12, 1881, after the foregoing claims had been rejected, the patentee says that: "Chief among the objectionable features is the universal practice of operating the valves by means of rods which pass through the stuffing boxes or glands, and are therefore generally in a chronic state of leakiness. In my device there is no place where water can leak out except inside the hopper, where it can do no harm. This is the controlling idea of my invention."

The court below entered a decree dismissing the bill for want of equity.

W. H. Dyrenforth, for appellants.

L. M. Hopkins, for appellees.

Before WOODS and SHOWALTER, Circuit Judges, and BAKER, District Judge.

BAKER, District Judge (after stating the facts as above). It is manifest that the patentee was simply a gleaner in a field already well harvested, and therefore the claim that a broad construction should be given to the patent is inadmissible. In view of the numerous prior American and English patents relating to water-closets disclosed in the record, it clearly becomes our duty to give the patent a construction no broader than its terms plainly require. The patent is for a combination every element of which is old, and all that is claimed for it is that it obviates some objectionable features found in other similar constructions. Similar combinations are found in many prior patents, but all of the elements found in complainants' combination, it is claimed, are not shown to have been used together in any one of the prior patents in the same relation to each other. It is insisted that the novelty of the combination can only be destroyed by showing that all of its elements have been used together before, and in the same relation to each other. The contrary is well established. Thompson v. Boisselier, 114 U. S. 1, 11, 5 Sup. Ct. 1042; Hill v. Wooster, 132 U. S. 693, 10 Sup. Ct. 228; Burt v. Evory, 133 U. S. 349, 10 Sup. Ct. 394; Pickering v. McCullough, 104 U. S. 310; Florsheim v. Schilling, 137 U. S. 64, 11 Sup. Ct. 20; Adams v. Stamping Co., 141 U. S. 539, 12 Sup. Ct. 66; Deere & Co. v. J. I. Case Plow Works, 9 U. S. App. 567, 6 C. C. A. 157, and 56 Fed. 841; Lumber Co. v. Perkins, 53 U. S. App. 66, 94, 25 C. C. A. 613, 616, and 80 Fed. 528, 531. In the case last named this court quoted the following from the testimony of Mr. Powers, one of the experts testifying in the case:

" 'But, on the other hand, in order to anticipate the claim of a patent, all of its elements, either identically or substantially, must be found in the same relation and combination with each other in some one patent or device;' " and proceeded to say: "To the doctrine of selection he refused to subscribe, and for that reason failed to find the invention of Perkins in the patent of O'Connor. In matters of fact the entire testimony of the witnesses shows them to be in substantial accord. The differences of opinion are explained by Mr. Powers' mistaken understanding of the rule by which the patentability of combinations of old devices should be determined. That the mere bringing together, in a new combination, of old devices or elements, especially if they belong to the same art or arts kindred to that to which the combination belongs, does not constitute invention is well settled. 'It is not enough that a thing shall be new, in the sense that in the shape or form in which it is produced it shall not have been before known, and that it shall be useful, but it must, under the constitution and statute, amount to an invention or discovery.' "

In determining whether a new combination of old elements constitutes invention, the most important and controlling considerations are the intrinsic novelty and utility of the concrete invention. One element of novelty and utility claimed for the present invention consists in placing the valve in the water way in connection with mechanism to actuate a valve stem within the hopper, by which means any leak-

age in or about the valve is discharged into the hopper. The patentee, in his letter of December 12, 1881, to the commissioner of patents, declared this to be the controlling idea of his invention. Another element of novelty and utility claimed for the combination consists in providing a chamber, o, in which the valve, m, moves, and in placing this valve back from the outlet, r, so as to dissipate the splash. The alleged novel adjustment of the valve in the water way, whereby all the leakage is received into the hopper, is found in a number of prior devices disclosed in the record. In view of the prior art, the arrangement of the valve to convey the leakage into the hopper, as shown in complainants' patent, lacks the essential element of novelty. In regard to the other feature of novelty, it is apparent that the patent furnishes no information as to the size of chamber, o, nor in reference to the distance back from outlet, r, at which the valve, m, should be placed. In these particulars the mechanic is left to the exercise of his own judgment. It is evident, therefore, that neither the size of the chamber, nor at what distance back from the outlet the valve, m, should be placed to dissipate the splash, can be determined except by experiment. "Accurate description of the invention is required by law for several purposes: (1) That the government may know what is granted, and what will become public property when the term of the monopoly expires; (2) that licensed persons desiring to practice the invention may know during the term how to make, construct, and use the invention; (3) that other inventors may know what part of the field of invention is occupied." Bates v. Coe, 98 U. S. 31, 39. The complainants cannot appropriate to themselves every size of chamber, and every distance from the outlet at which to place the valve. The defendant placed its valve as close as possible to the outlet, and it has no chamber, o, and it cannot, therefore, be held to infringe, without disregarding the positive requirements of the statute.

Nor can we assent to the contention that in determining the patentability of the alleged invention in suit we may not look to prior watercloset patents unless they belong to the class denominated "hopper closets." It is clear that all water-closets belong to the same art. Simply to remove from a pan closet the devices for discharging the leakage about the valve into the trunk, and to adjust the same devices to a hopper closet, would involve nothing more than could be accomplished by any mechanic skilled in the art, who desired to make the change. Nor would a mere change of the devices from a perpendicular position to a horizontal one involve invention.

The first claim is not limited to a valve of any particular description, and hence any valve device is included, so long as the "devices for operating the valve are entirely within the water way, with a stem projecting into the hopper, and actuated from within the hopper itself." It is to be borne in mind that the object of this arrangement is to dispense with the use of "stuffing boxes" and "glands," and to conduct any leakage into the bowl. The patents of Anderson, Lankford, and Worthington all show every element of the first claim, but they are not for water-closets, and therefore the valve stems do not project into hoppers; but they do project into receptacles of different kinds, and in view of the words "or other similar receptacle," in

the first part of the claim, the word "hopper" in the latter part cannot be construed to exclude every other receptacle. These patents do not, perhaps, technically constitute an anticipation of this claim, but they do show that it was old to combine in a receptacle a water connection wherein the devices for operating the valve are entirely within the water way, with a valve stem projecting therefrom into the receptacle, and actuated from within the receptacle itself. Indeed, this is admitted by the complainants' expert. In view of these patents, and especially in view of the American patents to Adams, Bartholomew, Craigie, Demarest, Jones, McElroy, Morrison & Smith, and particularly the English patent No. 3,990, all of which relate to water-closets, it seems clear that the combination embodied in this claim does not constitute a patentable invention.

The second claim is not expressly limited to a water-closet. It does not use the term "water-closet," nor is the receptacle into which the water is discharged expressly designated. From the use of the words, "within the hopper," it may perhaps be inferred that the combination relates to water-closets. Like claim 1, it is not limited to a valve of any particular construction, nor is it limited in respect to the mechanism for actuating the valve stem further than that it shall consist of "a lever, f, within the hopper, to engage with and actuate said stem, and mechanism whereby the lever, f, may be actuated." This does not limit the claim to a seat connection, but it includes any mechanism whereby the lever may be actuated. The specification expressly provides that the actuating mechanism may be a pull. Thus construed, this claim, if not technically anticipated by the American patents of Adams, Bartholomew of 1858 and 1866, Boyle, Craigie, Demarest, McElroy, Morrison & Smith, and the English patent No. 3,990, shows no such difference in the arrangement of the elements of the combination as to constitute a patentable invention. The English patent No. 3,990 contains every element of this claim. It has a valve in the service pipe, a controlling stem entirely within the water way, a part, c, within the hopper, to engage with and actuate the stem, and a seat by which this part, c, is carried. The part, c, when considered alone, perhaps does not constitute a lever, but the so-called lever, f, does not properly constitute a lever. Each might be more properly designated as an arm. However, it performs the same function in substantially the same manner.

The third claim differs from those preceding in that it includes the two valves and an exterior reservoir communicating with the valve case at a point between the valves. This claim, as originally presented, was as follows:

"In a water-closet or other similar receptacle, a water connection provided with a valve, d, combined with a valve, m, and an intermediate reservoir exterior to the closet, as set forth, whereby a flush of water may be obtained with a small service pipe."

This claim was rejected upon reference to patents to Carr, No. 9,480, and to Bartholomew, No. 10,531. The patent to Carr shows a water-closet having a water connection provided with two valves, and an intermediate reservoir exterior to the closet, and communicating with the valve case at a point between the two valves. The Bartholomew

patent shows a similar arrangement. In order to avoid these references, the claim was amended to read as follows:

"In a water-closet or other similar receptacle, a water connection provided with a valve, d, combined with a valve, m, both mounted on and simultaneously operated by the same stem, and an intermediate reservoir exterior to the closet, as set forth."

The amendments consisted in limiting the claim to the two valves "both mounted on and simultaneously operated by the same stem," and in omitting the words, "whereby a flush of water may be obtained with a small service pipe." In this form the claim was again rejected. The claim was then amended by omitting the word "same" occurring before the word "stem," and by adding the words "a water connection provided with a stem entirely within the water way." In this form the claim was objected to, and was rewritten in the form in which it now appears in the patent.

It is evident that the complainants cannot assert any right to the form of the combination embodied in any of the rejected claims. Whether such rejection and the patentee's acquiescence therein are to be regarded as a dedication, an estoppel, or a waiver, they conclude him and his privies. Neither the patentee nor his privies can claim the benefit of his rejected claims, nor such a construction of the claims allowed as would be equivalent thereto. He cannot claim such a construction of his patent as would include what he was expressly required to abandon as a condition of the grant, even if it takes away a material part of his real invention. Morgan Envelope Co. v. Albany Perforated Wrapping Paper Co., 152 U. S. 425, 14 Sup. Ct. 627. It will be seen that an attempt was first made to procure the allowance of a claim which was not limited to the relations which the valves, d and m, bore to the stem. Such a claim would have carried any arrangement of the valve stem in the combination claimed. Failing in this attempt, the claim was amended for the purpose of avoiding the references by limiting it to the valves "both mounted on and simultaneously operated by the same stem." The effort was then made to eliminate the word "same" before the word "stem," which met with failure, and the word was restored as it now appears in the third claim. In view of these rejections and amendments, it seems clear that the only novelty which induced the allowance of the claim consisted in the combination in which the two valves are both mounted on and simultaneously operated by the same stem. The claim must be so construed as to exclude any combination in which the two valves are not both mounted on and simultaneously operated by the same stem. Any other construction would give the complainants the benefit of the rejected claims. The defendant's valves are not mounted on nor operated by the same stem. In complainants' device counterweights are employed to lift the seat, or the mechanism which is employed to actuate the lever, f, and carry lever, f, away from contact with the stem, e, whenever the flush water is to be liberated. The water pressure behind valve, m, then moves the valve, and there is no force to cause the valve to close again until the seat is wholly or partially depressed. In the defendant's device, a powerful spring is employed within the valve case and

around the valve stem. This spring is sufficiently strong to force the valve, m, away from its seat, and to sustain the weight of the seat constantly resting upon the valve stem. In the defendant's device a single element, the spring, performs the twofold and separate functions performed by the counterweights and water pressure of complainants' device. The same result is produced, but the means employed are different. Besides, in view of the patents hereinbefore cited, this claim, if not fully anticipated, discloses no such advance over the prior art as amounts to invention or discovery.

All the preceding claims are limited to the valve device having a valve stem located entirely in the water way, and projecting into the hopper to engage mechanism arranged therein by which the mechanism is actuated. Claim 5 does not contain this limitation. So far as the valve stem is concerned, this claim simply recites that it is "common to both of said valves." By its terms it is not important whether the stem extends into the hopper or not. The claim calls for a "lever, f, actuated by suitable mechanism" for actuating the valve stem. This mechanism includes either a seat or a pull. In terms the claim does not require the lever, f, to be located within the hopper. The claim includes the chamber, o, disposed between the valve, m, and the outlet, r, for the purpose of dissipating the splash occurring when the valve is unseated. We have already shown that neither the specification nor claim furnishes any information in regard to the size of the chamber, or in reference to the distance back from the outlet at which the valve, m, should be placed. This is left to be determined by experiment based upon the experience of the mechanic. The object to be accomplished, however, makes it clear that the valve should be set back several inches, and this is admitted by the complainants' expert. If the claim is not void for uncertainty for reasons hereinbefore stated, and is not anticipated, still, as the defendant seats its valve close to the outlet, and does not use the chamber, o, it does not infringe. In any event, we fail to discover anything in this claim which, in view of the patents in the record, involves invention or discovery.

The sixth claim includes the valve, d, which controls the flow of water from the service pipe, and its operative stem within the water way, combined with the compound lever, whereof one member, f, is within the hopper and the other member is outside of the same. The claim is limited to the compound lever specified. The mechanism for actuating the valve stem in the defendant's device consists of the hinged seat having upon its under side an arm which projects down into the bowl, and engages the projecting end of the valve stem. This is not a compound lever in any sense of the term. It constitutes nothing but a simple lever. The sixth claim is not infringed by the defendant's device, because it fails to use a compound lever. Indeed, this appeared so evident that the patentee in his testimony in effect concedes that the defendant's device does not infringe the claim. We are of opinion that no error was committed in dismissing the complainants' bill. The decree will therefore be affirmed, at the cost of the complainants.