CHISHOLM, BOYD & WHITE CO. v. ANDERSON FOUNDRY & MACHINE WORKS et al.

(Circuit Court, D. Indiana. May 7, 1902.)

No. 9,827.

1. PATENTS—ANTICIPATION—BRICK MACHINE.

The White and Boyd patent, No. 429,296, for a brick machine, claim 10, which relates to a stop mechanism to limit the descent of the plunger, but does not designate, either in the claim or specification, any particular location for the stop, was anticipated by the Brewis patent, No. 395,871.

2. SAME—INSUFFICIENCY OF DESCRIPTION.

The White patent, No. 455,374, for a brick-making machine, claim 17, covering a hopper having the function of being movable by gravity, but

which does not describe nor claim the means of constructing and making the same movable by gravity, is void for lack of invention. Claim 23, relating to rods for connecting the oscillating arms to the feed box for the purpose of transmitting the reciprocating motion of the arms to the box, but which is not limited to any particular form of rods or pivotal connections, is void as attempting to claim a function without sufficiently describing the mechanical means by which the result is attained, as well as for lack of invention in view of the prior art.

**8. SAME.**
    The White patent, No. 488,622, for a brick machine, claims 16, 19, and 20, are void for lack of invention and anticipation.

In Equity. Suit for infringement of letters patent No. 429,296, issued June 3, 1890, to B. C. White and James A. Boyd for a brick machine, No. 455,374, issued July 7, 1891, and No. 488,622, issued December 27, 1892, each to B. C. White for brick machines. On final hearing.

Jesse Cox and Harvey, Pickens, Cox & Kahn, for complainant.
Wood, Boyd & Wood and Goodykoontz, Ballard & Campbell, for defendants.

BAKER, District Judge. This is a suit for injunction and accounting for alleged infringement of three patents, owned by complainant, relating to dry pressed brick machines, the first being patent No. 429,296, granted June 3, 1890, to B. C. White and James A. Boyd; the second being patent No. 455,374, granted to B. C. White July 7, 1891; and the third being patent No. 488,622, granted to B. C. White December 27, 1892. The first patent contains 10 claims, and of these the tenth claim is the only one alleged to have been infringed. The second patent contains 25 claims, and of these the seventeenth and twenty-third claims are the only ones alleged to have been infringed. The third patent contains 20 claims, and of these the sixteenth, nineteenth, and twentieth claims are alleged to have been infringed.

The mechanical principles embodied in the six claims alleged to have been infringed are the questions presented for consideration and determination.

The tenth claim of the first patent relates to a stop device forming a part of the pressing mechanism of the dry pressed brick machine. Claim 17 of the second patent relates to the hopper for feeding clay in a brick machine, so mounted as to be vertically movable and to rest in position by gravity. Claim 23 of the second patent relates to adjustable arms for oscillating the feed box, the novel feature being certain pivotal connections which give rigidity to the arms in movement. The sixteenth claim of the third patent relates to the construction of the front wall of the feed box of a material substantially weaker than the material of which the remaining walls are formed. The nineteenth and twentieth claims of the third patent cover the making of a brick machine in two parts for convenience in shipping, the main part consisting of the operative elements, and the other part consisting of the driving elements. It is at once seen that only a few points of comparatively minor importance are involved. The defendants' alleged infringing machine is manufactured under and in accordance with the claims of patent No. 598,554, granted to Anton Berg February 8,

1898. The defenses are anticipation, want of patentable novelty and utility, and noninfringement.

The tenth claim of the first patent is as follows:

"The combination of a mold, upper and lower plungers, toggle arms connected with both plungers and movable vertically at both ends with the plungers, a toggle operating beam fulcrumed between its ends and connected with the central joint of the toggle, and a stationary stop or stops located in position to engage the upper plunger and limit the descent of the same, and thereby operating to determine the vertical position of the plungers within the mold at the time of greatest compression, substantially as described."

The only element of the above claim alleged to be infringed is the use by the defendants of the "stationary stop or stops located in position to engage the upper plunger and limit the descent of the same." The only instruction contained in the patent as to the location of the stops is found in Fig. 2 of the drawings, in which they are shown as screw bolts tapped into the upper surface of the mold table under the upper crosshead upon opposite sides of the mold. Neither the specification nor the claim defines any preferred location for these stops, except that they should be located in the path of descent of the upper plunger. So far as the specification and claim point out, these stops might be attached to the side frame or to the upper crosshead and come down against the mold table. Nothing is said about the necessity or desirability of locating these stops on top of the mold table. It seems to me that this element of claim 10 is anticipated by patent No. 395,871, granted to J. J. Brewis January 8, 1889. In the Brewis patent a stop is described and claimed which is secured to the upper crosshead, being of such length as to strike the mold table and limit the downward movement of the upper plunger at a predetermined point. The specification says of this stop:

"In Fig. 7 I have shown an adjustable grooved shelf for giving the two pressures on opposite sides of the brick as has been indicated, while in Fig. 8 I have shown an adjustable stop A, secured to the crosshead R, which allows the upper plunger to enter the mold box a certain and predetermined distance so as to give the necessary amount of pressure to the top of the brick until stop A strikes the top table and arrests the further downward movement of the upper plunger. The lower plunger is now raised by the straining of the toggles so as to exert pressure on the brick, and in this way first a top, and then a bottom, pressure is exerted on the brick."

This operation is the same as that described in claim 10, and the stop secured in the upper crosshead is for the same purpose, and accomplishes the same result in the same way. The stop is claimed in the Brewis patent as follows:

"In a brick machine of the character described, the adjusting stop or bolt A, secured to the crosshead R, as described, whereby the downward movement of the plunger is arrested as set forth."

The only difference between the Brewis stop and the stop of claim 10 is that the stop of the Brewis patent is secured to the upper crosshead, while complainant's stop is secured to the top of the mold table. This is simply a structural difference, and is not pointed out in the specification of the complainant's patent, nor is it claimed. When it was once shown that in making dry pressed brick the downward

movement of the upper plunger should be arrested at a certain and predetermined point, it was simply a matter of mechanical selection whether the stop should be secured to the upper crosshead or to the top of the mold table. Mere change in the location of the stop from the crosshead to the mold table does not avoid anticipation, nor does it involve invention. Any mechanic would, by the application of the simplest mechanical skill, be expected to make the change without the exercise of any inventive faculty. In this view of the case it becomes unnecessary to determine whether or not the strips placed on the mold table of the defendants' brick machine act as a stop and are the equivalent of the stops of the complainant's brick machine. Nor is it necessary to determine whether or not the downward movement of the upper plunger in the defendants' brick machine is arrested by means of compression produced by the contact of the fulcrum roller with the cam block of the pitman beam, as contended by the defendants.

Claim 17 of the second patent is as follows:

"The combination, with a mold and reciprocating feed box, of a hopper resting in contact with the feed box, the part of the feed duct or hopper which is in immediate contact with the feed box being movable freely toward and from the feed box, whereby gravity tends to hold said hopper in contact with the feed box, substantially as described."

The specification describes a particular two-part hopper, the lower end of which is provided with a telescoping ring which rests by gravity on the feed box. As the feed box moves back and forth under the hopper, this ring in the hopper is free to move up and down, and thus has a tendency to prevent the clay from leaking between the hopper and feed box. The specification also says that an equivalent method is to make the whole hopper rest by gravity on the feed box, and the complainant's contention is that the claim embraces this equivalent construction. This contention, however, seems to be untenable. The language of the claim, viz., "the part of said feed duct or hopper which is in immediate contact with the feed box being movable freely toward and from the feed box," seems plainly to limit the claim to a two-part hopper; and, thus limited, the defendants' device does not infringe. If the claim is to be construed as covering every sort of hopper capable of movability by gravity, it would be invalid for want of accurate description. The claim is for a movable hopper. It does not accurately describe the means by which the hopper is made movable, but simply claims a hopper having the function of movability by gravity. It can be safely said of this claim that no information is furnished so that a licensed person desiring to practice the complainant's invention would know how to make, construct, and use the hopper. The method of making and using the hopper can only be determined by experiment, and not from an accurate description contained in the patent. So, if the claim is not for a function, it must be held invalid for want of accurate description of the mechanical elements of the alleged invention. In view of the prior art, even if the claim were not invalid for the foregoing reasons, it seems to me that no invention is shown in simply devising a hopper movable by gravity. Invention might be disclosed if some new and useful means of making, constructing, and using the hopper were accurately described, but none

such is shown. In the case of Kelly v. Clow, 32 C. C. A. 205, 212, 89 Fed. 297, 304, 60 U. S. App. 338, 365, 366, the court said:

"In regard to the other feature of novelty, it is apparent that the patent furnishes no information as to the size of the chamber, o, nor in reference to the distance back from outlet, r, at which the valve, m, should be placed. In these particulars the mechanic is left to the exercise of his own judgment. It is evident, therefore, that neither the size of the chamber, nor at what distance back from the outlet the valve, m, should be placed to dissipate the splash, can be determined except by experiment. 'Accurate description of the invention is required by law for several purposes: (1) That the government may know what is granted, and what will become public property when the term of the monopoly expires; (2) that licensed persons desiring to practice the invention may know during the term how to make, construct, and use the invention; (3) that other inventors may know what part of the field of invention is occupied.' Bates v. Coe, 98 U. S. 31, 39, 25 L. Ed. 68. The complainants cannot appropriate to themselves every size of chamber and every distance from the outlet at which to place the valve."

In other words, the complainant cannot cover by its claim, as it is sought to do, every sort of hopper and every mechanical means by which a hopper may be made so as to be movable by gravity.

Claim 23 of the second patent is as follows:

"The combination with a mold and stationary feed hopper of a reciprocating feed box, a mold table provided with a flat guide surface sustaining the feed box, oscillating arms for actuating the feed box, the connecting rods uniting the feed box to the side arms [said connecting rods being joined to the oscillating arms and to the feed box], pivotal connections constructed to rigidly hold the connecting rods parallel with the feed box, and means for separately adjusting the lengths of said connecting rods, substantially as described."

This claim relates to the rods connecting the oscillating arms to the feed box, whereby the reciprocating motion of the oscillating arms is transmitted to the feed box, so that it is moved back and forth under the hopper and over the molds. The features of the claim are means for adjusting the length of the rods and rigid pivotal connections between the oscillating arms and the connecting rods. The specification states that the object of this rigid pivotal connection is that the feed box may be reciprocated on the mold table without the use of extra guides. This feature, however, is not included in the claim, and under a familiar rule it cannot be read into the claim for the purpose of establishing novelty or infringement. The old and familiar turnbuckle is the means employed for separately adjusting the lengths of the connecting rods, and constitutes no part of the complainant's invention. The complainant's counsel, on page 144 of his brief, makes a substantially accurate statement of this claim as follows:

"But, as is well shown by complainant's experts, Messrs. Dayton and H. M. Cox, claim 23 is not limited to any particular form of connecting rods or pivotal connections from the feed box to the oscillating arms. Any kind of pivotal connections will answer the terms of this claim provided they are so constructed as to rigidly hold the connecting rods parallel with the feed box, and any kind of connecting rods will answer it provided that there be means for separately adjusting the lengths of the connecting rods."

This claim, thus construed by complainant, sweeps in every kind of adjustable connecting rods and every kind of pivotal connections, no matter how made, constructed, or used, provided a certain function

or result is obtained. Thus construed, the patent is invalid. There must be accurate description of mechanical means specified and claimed, and not simply devices so constructed as to produce certain results. The purpose of the specification and claim is to accurately describe the means, and not the function or result. But the device covered by this claim seems to be substantially anticipated by prior patents in the record, and, if not anticipated, there is no such advance as discloses invention.

The sixteenth claim of the third patent is as follows:

"The combination, with a mold table and a feed box or hopper, of a reciprocating feed box the front wall of which consists in whole or in part of a piece or strip which is materially weaker than the main parts of the feed box, and is detachably secured to the latter, substantially as described."

This claim relates to the making of the front wall of the feed box of wood or some material which is weaker than the rest of the box, so that, in case the box is accidentally caught by the moving plungers or otherwise, the front wall will give way and the other parts will be saved from injury. This claim, if it involves invention, is literally anticipated in the prior art as shown by the testimony of defendants' witnesses. In addition, the feed box of the Brewis patent contains a wooden front, the remaining parts being of iron. The specification says:

"T is a piece of wood or other suitable material, secured to the front end of the feed box, the front edge of the T being arranged to be in a line with the rear walls of the mold when the feed box is in its rearward position, as shown in Figs. 5, 7, and 8."

Besides, it requires nothing more than the expected skill of a mechanic to make the front end of the feed box of wood. When it was once found that the front wall of the feed box was more likely to be accidentally broken than the other parts, it would at once occur to one skilled in the art that, by making the front wall of wood or other material easily broken, the remaining parts might thus be saved uninjured.

The nineteenth and twentieth claims of the third patent cover the making of a brick machine in two parts for convenience in shipping, the main part consisting of the operative elements, and the other part consisting of the driving elements. These two claims differ in no essential particular. I do not think it important to set them out. In my opinion, in addition to being anticipated, they are void for want of invention. Besides, if any invention were shown the claims are invalid for failure to describe accurately or otherwise the mechanical elements constituting the alleged invention as required by the statute.

For the foregoing reasons, the bill of complaint will be dismissed for want of equity, at the costs of the complainant.