BABCOCK, (CITY BANK OF RACINE v.)
  See Case No. 2,741.

---

## Case No. 698.

### BABCOCK v. DEGENER.

[1 MacA. Pat. Cas. 607.]

Circuit Court, District of Columbia. Jan., 1859.

PATENTS FOR INVENTIONS — RIGHT TO APPEAL — PRIORITY OF INVENTION—ABANDONMENT.

[1. Under the provision of Act July 4, 1836, § 8, (5 Stat. 119,) that whenever application is made for a patent which interferes with a prior patent, or one for which an application may be pending, the commissioner of patents shall give notice thereof to the applicants or patentees, "and, if either shall be dissatisfied with the decision of the commissioner on the question of priority of right or invention, * * * he may appeal from such decision," the right of appeal is not confined to unsuccessful applicants, and the patentee under a prior patent may appeal from a decision that a patent shall issue to the applicant. Pomeroy v. Connison, Case No. 11,-259. disapproved.]

[2. An applicant for a patent for an improvement in printing presses had made a complete model of his invention in 1853, as shown by the uncontradicted testimony of two witnesses. The earliest evidence of a similar invention by a prior patentee was a drawing exhibited in October, 1855. Held, that the applicant had established priority of invention.]

[3. On behalf of the patentee under the earlier patent, it was claimed that the applicant's invention was not a practically operative machine; that the amount of force required to operate the cog-wheels, which conveyed motion to the several parts of the press, and the weakness of the frame, (it being open-armed, and not braced across the top as was the patentee's,) were defects that made it practically useless; and that it was an immature experiment. The testimony, as well as the official decision, of the examiners of patents, was that the applicant's model represented a complete operative machine. Held, that the model must be deemed a practicable machine, and that the claim of abandonment, founded on the impracticability of the model, had not been established.]

[4. Abandonment of an invention involves a public knowledge and use of the invention, and is to be proved by evidence of acts inconsistent with the retention of exclusive property in the invention. Merely withholding the invention from the public does not amount to an abandonment, though it may, as against a junior inventor, require the fullest measure of proof on the part of the first inventor.]

[See Kelleher v. Darling, Case No. 7,653; Sprague v. Adriance, Id. 13,248; and, for cases holding that application for a patent should be made in a reasonable time, see Ellithorpe v. Robertson, Case No. 4,409; Stephens v. Salisbury, Id. 13,369.]

[5. The use of an invention by the public for the period of 11 months before the date of a patent to a junior inventor held to be too short a period to debar the applicant from taking advantage of the saving terms of Act March 3, 1839, § 7, (5 Stat. 354.)]

[Appeal from the commissioner of patents awarding a patent to Frederick O. Degener. Affirmed.]

### Statement of the Case.

The patent issued to Frederick O. Degener January 11th, 1859, No. 22,611. The part of the commissioner's report relating to the question of jurisdiction is given in full:

### Commissioner's Report.

In the interference case recently decided by this office between Frederick O. Degener and George K. Babcock, and from which decision an appeal has been taken to your honor, it is probable that it will be insisted by the appellee (Degener) that the appeal does not lie, because the judgment rendered was against a patentee. In Pomeroy v. Connison, [Case No. 11,259,] Judge Cranch gave this interpretation to the eighth section of the act of [July 4,] 1836, [5 Stat. 117, c. 357;] but as the grounds of his opinion have not been regarded as satisfactory, a general desire has

been felt that the question should be re-examined. To accomplish this result, the appeal in the present case was granted. The clause of the act referred to, after directing that the commissioner shall give notice alike to patentees and applicants whose claims in his judgment interfere with each other, declares that "if either shall be dissatisfied with the decision on the question of priority of right or invention, on a hearing thereof he may appeal from such decision," &c. Language could not be more emphatic or distinct; and if the applicant can claim that it gives him a right of appeal, it is difficult to perceive on what ground the patentee could be excluded. It would be an unsound rule of construction which would permit a right so broadly conferred to be frittered away by the concluding language of the sentence, when that language may well receive an exposition entirely consistent with the preservation of such right. When both parties are applicants, then the question to be decided by the appellate judge is certainly 'which, or whether either, of them is entitled to receive a patent as prayed for,' and it is to such a case that this language is to be confined. But this does not conflict with the previous declaration that when a patentee and applicant are parties to the issue either of them may appeal. The appeal being thus allowed, the nature and effect of the judge's action upon it follow as a well-understood legal consequence. The declaration of the learned judge that the decision of the commissioner, so far as the patentee is concerned, is a brutum fulmen, and that an appeal is not given in such case to the patentee because such decision does not in any manner affect his legal or equitable rights, seems to find no countenance in the terms or spirit of the act of 1836. If the rights and interests of the patentee cannot be affected by the decision of the commissioner, why is he summoned to the issue and subjected to the duty and burden of the investigation? It is a maxim that the law will force no man to do a vain thing; yet worse than vain would be the action of the patentee as a party to an interference if, terminate the question as it might, his rights and interests were to remain unaffected thereby. It is true that the commissioner cannot cancel a patent, but he can impair its value by asserting his conviction of its illegality and by giving the invention which it protects to another. If his judgment is erroneous, it inflicts a deep injury upon the patentee, by inviting infringements upon his patent, and legalizing them as far as possible, and thus involving him in harassing and impoverishing litigation. For such injury he should have the summary redress by appeal which it was doubtless the intention of the act of 1836 to give him. As in practice in such cases, the patent, although ordered, is not issued pending the appeal. There is no obstacle to the complete execution of the judgment of the appellate judge should he determine in favor of the patentee and against the claim of the applicant. It is obvious that every reason urged against the authority of your honor to entertain an appeal in behalf of a patentee would equally apply against the authority of the commissioner to decide an issue to which such patentee was a party; and yet the commissioner is not only authorized, but expressly required by the statute under consideration to form and to determine such issue. (Signed, J. Holt, Commissioner.)

A. Pollok and T. D. Stetson, for appellants.
J. L. Kingsley, for appellee.

MERRICK, Circuit Judge. In this case, upon an interference declared, the commissioner of patents has awarded a patent to the applicant for an improvement in printing-presses, and an appeal has been prayed and allowed by the commissioner from that decision. It is insisted that no appeal will lie in such case, and that consequently the commissioner erred in its allowance, and that the appeal should be dismissed. The case of Pomeroy v. Connison, [Case No. 11,259,] decided by Judge Cranch in 1842, is relied on for this proposition. The decision is directly in point, but its correctness is assailed by the commissioner in his argument, and also by the appellant, and I therefore cannot escape its consideration. Were it the decision of a superior tribunal, it would be incumbent upon me to yield to its authority, whatever might be my individual opinion upon the true interpretation of the law; but not being of that dignity, I must look to the reasoning only on which it rests, giving, of course, all due weight to it as the opinion of a learned and enlightened judge, whose judgments at all times challenge respectful consideration.

Although the power and jurisdiction given by the patent laws are special and limited, I do not think that the policy of the law ever contemplated that they should be construed strictly, in the sense in which strict construction is held to be the rule of interpretation of those statutes which confer powers in derogation of common rights, or clothe with authority special tribunals, to the curtailment of the jurisdiction of superior courts administering justice upon the principles and after the modes known to the common law. On the contrary, all the rights and powers affecting the subject of patents arise out of positive law, and have been so benignly regarded by the framers of our institutions that they have been specially secured and confided to the care of the federal government by the provisions of the constitution itself. One portion of the law is not to be construed more rigidly than another, but all the parts, having their common source in the statutes, are to be interpreted with a wise liberality of construction, in furtherance of justice, and to give equal aid and facility of vindication to

every right which grows out of patentable discoveries. Taking this principle of construction for our guide, if we find the language of the statute broad enough to embrace an appeal by a patentee from a decision in favor of an applicant, as well as an appeal by an applicant where the decision has been against him and in favor of the patentee, and if we can also discover any advantage which might accrue to the patentee from allowing him the appeal, then the statute should be so interpreted, notwithstanding the law be susceptible of another stricter construction which would exclude him from that privilege.

Now, by the act of [August 30,] 1852, [10 Stat. 75,] c. 107, all the powers, responsibilities, and duties imposed by the eleventh section of the act of [March 3,] 1839, [5 Stat. 354,] upon the chief judge were conferred upon each of the assistant judges of the circuit court of the District of Columbia, and appeals may be taken to either of the three judges; and by the eleventh section of the act of 1839 the right of appeal to the chief judge has been extended to all cases where an appeal to a board of examiners, provided for in the act of [July 4,] 1836, § 7, [5 Stat. 119,] might have been taken. The whole question comes, then, to what appeals might have been taken to a board of examiners under the act of 1836. The eighth section of that act contains the following clause: "That whenever an application shall be made for a patent, which in the opinion of the commissioner would interfere with any other patent for which an application may be pending, or with any unexpired patent which shall have been granted, it shall be the duty of the commissioner to give notice thereof to such applicants or patentees, as the case may be; and if either shall be dissatisfied with the decision of the commissioner on the question of priority of right or invention, on a hearing thereof he may appeal from such decision, on the like terms and conditions as are provided in the preceding section of the act; and the like proceedings shall be had to determine which, or whether either, of the applicants is entitled to receive a patent as prayed for." The words "if either shall be dissatisfied with the decision of the commissioner on the question of priority of right or invention, on a hearing thereof, he may appeal from such decision," are used in reference to the persons named in the portion of the sentence immediately preceding who are entitled to notice from the commissioner, to wit, "applicants or patentees, as the case may be." Then, not only is the language of the statute broad enough to embrace, but in point of fact does embrace, in explicit terms, a "patentee" who is dissatisfied with the decision of the commissioner on the question of priority of right or invention. But it is said that no valuable right of the patentee is at all prejudiced by the decision of the commissioner, inasmuch as the commissioner has no power under the statute to vacate his patent; and notwithstanding the issue of a patent in favor of his rival applicant, he may, under the sixteenth section of the act of 1836, go into a court of equity to avoid the junior patent. Is it true, however, that the patentee is on that account not injured by the emanation of the junior patent? Certainly if the framers of the patent law had thought so, and that the act of the commissioner in granting the junior patent was vain and futile as to his, they would not have so carefully imposed upon the commissioner the duty of giving the patentee notice of the interfering claim, and an opportunity to contest the right of the applicant before the commissioner. If he has an interest in contesting the emanation of another patent before the commissioner, is that interest divested by an adverse decision? The same interest which authorizes him to call for a decision would operate with unabated force until a correct decision were obtained, and he would be as much protected by a decision of the judge, on appeal, directing the commissioner not to issue a patent as by the commissioner's own resolution to the same effect. As the law has recognized this interest beyond dispute in the one case, it seems to follow by irresistible conclusion that it recognizes it in the other, the language of the act being comprehensive enough to include the means of its continued vindication.

Besides, it will readily be perceived that the emanation of a second patent must throw a cloud upon the title of the prior patentee and seriously impair the market value of his patent, not only in the continuous production and sale of the articles covered by it, but still more effectually deprive him of the means of selling, in solido, the property in his discovery by an assignment in whole or in part of the patent; for who would purchase from him with a junior patent staring him in the face, sanctioned by a solemn adjudication of the commissioner in favor of its priority? And although the sixteenth section of the law of 1836 [5 Stat. 123] gives the patentee the further remedy of a bill in equity, the remedy thereby is slow and vexatious, requiring months, perhaps years, of watchfulness, anxiety, and expense before he can reap its fruits, and in part, at least, but compensatory, and not wholly and ab initio preventive. It cannot be said that this power to defeat a prima facie right, which has already sprung into existence, is the legal equivalent for a total prevention of the origination of such adverse claim. Moreover, the party holding the junior patent has the means in his hands of enabling other persons to injure the senior patentee; for notwithstanding he may file his bill in equity against the junior patentee, and have his patent declared void, yet, by the proviso of said sixteenth section, such decree "shall not affect the rights of any person except

the parties to the action or those deriving title from them subsequent to the rendition of such judgment." It will therefore be seen that from the date of the emanation of the patent up to the time of final adjudication the junior patentee has it in his power by licenses, assignments, and in various ways, to raise up other competitors to the senior patentee, as to each one of whom the judgment will be inoperative, and against each one of whom he must run the hazard and expense of a new suit. But if on appeal to a circuit judge from the decision of the commissioner the judgment of the commissioner is reversed and a patent withheld, none of these evil consequences to the senior patentee can follow. It then appears that substantial benefit may accrue to the patentee from having his appeal to the circuit judge, and the allowance of such appeal by the commissioner operating a supersedeas or suspension of his judgment until final hearing, the relations of the two parties to each other remaining in the interval unchanged. The summary nature of the remedy, too, and its speedy hearing which the statute requires, commend a resort to such appeal in regard to a right the duration of which is limited to fourteen years.

But it is said that in the clause "if either be dissatisfied with the decision of the commissioner, * * * he may appeal," the word "either" may be satisfied by applying it to the words "such applicants," i. e., either of such applicants; and that this construction is "probable, from the fact that they [the legislature] have only authorized the judge to determine between contending applicants, and not between an applicant and a patentee; for, when they come to say what the judge is to do upon the appeal, we find it is to determine which, or whether either, of the applicants is entitled to receive a patent as prayed for. The word 'either' in the former part of the claim is here explained to mean either of the applicants. It cannot be contended that the judge is to decide whether a patentee is entitled to receive a patent which he has already received and which is still in his possession."

But unquestionably the language quoted cannot be limited to the case of contending applicants, since an appeal has never been denied to the unsuccessful applicant as against the patentee; and upon such appeal the patentee has always had a standing before the judge upon appeal to contest the application, which standing he could only have by force of the provisions of the eighth section and of the words thereof above quoted. But the phrase "to determine which, or whether either, of the applicants is entitled to receive a patent as prayed for" appears to me to have been introduced into the section for a totally different object from the one imputed. The preceding part of the sentence had pointed to the question which the judge was to review on appeal—"the question of priority of right or invention"—which would of necessity be the only question open in a contest between an applicant and a patentee, the government upon that issue being estopped, as against the patentee, from denying the patentability of that to which it had already given its sanction by the issue of the existing patent. And besides, according to the ordinary rules regulating appeals from one tribunal to another, the appellate is confined in its revision to those precise questions which were agitated before the inferior tribunal. In regard to patent appeals, this general policy is enforced by the eleventh section of the act of 1839, [5 Stat. 354,] which expressly confines the judge to the questions presented by the reasons of appeal and the decision of the commissioner. But in the case of contending applicants there is not only the question of priority in agitation between them to be passed upon by the appellate judge, but there is a further question, which perhaps it may be the interest of both to keep out of the view of the judge, but one in which the government, as the guardian of the rights of the people, has the deepest interest, to wit, the question whether either of the applicants has brought forward a patentable claim; and to insure the examination of this question at every stage of the controversy, congress has industriously embodied in the statute the injunction upon the judge to inquire whether either of the applicants be entitled to a patent as prayed for. If neither has produced a patentable claim, then neither is entitled to receive a patent, however the question of priority between them may be decided. This interpretation of the words of the statute appears to give vital energy to every word of a section which otherwise would be awkward and contradictory in its parts, and seems to be furthering the great object of the patent laws as well as administering equal justice to all parties, and to be in harmony with every other provision of the statute; and when we come to the sixteenth section, we find the same equality of remedy. When there are two interfering patents, (and it matters not whether either of them has been granted on an appeal to the judge from the commissioner or originally by the commissioner,) or when an application for a patent has been refused, the right of second appeal is given in both cases in the form of an original bill in equity before the proper circuit court, with an ultimate resort to the supreme court of the United States. In view, therefore, of the reasons I have assigned, and of the studious amplitude of remedies the law has provided for meritorious inventors, I have reached the conclusion that under the eighth section of the act of 1836 [5 Stat. 120,] a patentee has equal right of appeal from a decision of the commissioner in favor of an applicant to one of the judges of the circuit court of the District of Columbia as an applicant for a patent has under the same sec-

tion from an adverse decision in favor of a prior patentee.

Having, then, jurisdiction, I proceed to inquire into the merits of the case. Both parties claim a certain improvement in printing-presses, which need not be minutely described, as they admit the principles involved to be identical; and only two questions have been presented for my consideration, to wit, priority of invention and abandonment on the part of Degener, the applicant. On account of the great looseness in practice of solicitors in assigning reasons of appeal, I take occasion to remark that it is perhaps very questionable whether these points have been presented for my consideration with sufficient distinctness. The law of 1839, c. 87. [88,] § 11, [5 Stat. 354,] requires the commissioner to lay before the judge the grounds of his decision, fully set forth in writing, touching all the points involved by the reasons of appeal, to which the revision shall be confined. Now, the nature of an assignment of reasons to which the revision of the judge is to be confined is entirely nullified by an assignment, in the sweeping terms of a single sentence, asserting that the decision of the commissioner is erroneous, because against the weight of legal evidence and contrary to the principles of law. It is manifest that such an assignment does not assist the judge in ascertaining the precise issues of law and fact made before the commissioner; and while I am far from intimating a desire for technical accuracy in an assignment, yet reasonable definiteness and precision in view of the words of the law, may hereafter be more strictly insisted upon. The response of the commissioner in the present case, however, shows with great distinctness the points made before him, and they are priority of invention and abandonment by Degener, the applicant. From an inspection of the testimony, it is apparent that Degener had made a complete model of his invention in the fall of 1853. The evidence of two witnesses—Kneeland and Kuck—stands uncontradicted on this point, while the earliest trace of Babcock's invention was in a drawing shown to one Morrison Davis in October, 1855. This point, then, is with the applicant.

On the second point I am equally well satisfied with the correctness of the commissioner's decision. The counsel for Babcock have argued this question very elaborately in two aspects. They have endeavored to show that in point of fact the invention of Degener was not a practically operative machine, but rested only in immature experiment, furnishing no obstacle to Babcock's patent and no right to a patent in Degener; that the amount of force necessary to operate the several cog-wheels which convey the desired motion to the several parts of the press, and the weakness of the frame, (it being open-armed, and not braced across the top, as Babcock's,) were defects which made it practically useless and a mere vain experiment. Besides the official judgment of the examiners in the case—that the model represented a complete operative machine—at the request of the appellant's counsel I examined under oath, Examiners Baldwin and King, both of whom testified before me that in their opinions the model of Degener represented a practically operative machine; Examiner King concluding that the frame-work of Babcock's machine was stronger than Degener's, and to that extent perhaps better. Both being shown to be models of operative machines, this branch of the objection fails—an inquiry into the comparative merits of the two, beyond the naked question of capacity to operate, not being open for investigation. The remaining branch of the argument upon abandonment, in the proper sense of the term, remains to be considered. The true meaning of the word in the acts of congress is an abandonment of the invention to the public—a dedication of his discovery to the free use of his fellow beings. It is, as said by Judge Story, "like the dedication of a public way or other easement," and is to be proved in the same manner by evidence of some acts inconsistent with the retention of exclusive property himself; and in this regard his acts are to be construed liberally. Merely withholding his invention from the public, as justly argued by the commissioner, can never amount to an abandonment; however it may, in connection with the circumstances, pile up difficulties, if too long continued, in the way of asserting and proving priority over another inventor who applies for a patent. It may raise up an equity in favor of the junior discoverer which will call for the fullest measure of proof on the part of the first inventor to disperse the cloud of distrust with which he has thereby enveloped his own case, but of itself cannot defeat his claim.

It has been supposed that the case of Gayler v. Wilder, 10 How. [51 U. S.] 477, has introduced a new rule on this subject into the patent law; but not so. The court there expressly affirms, on page 498, that the omission of a prior discoverer to try the value of his invention by proper tests, or his omission to bring it into public use, would not deprive it of its priority. "He might have omitted both, and also abandoned its use, and been ignorant of the extent of its value;" yet if it was the same with the junior patentee, "the latter would not, upon such grounds, be entitled to a patent," provided the former, "and its mode of construction, were still in the memory" of the first inventor "before they were recalled" by the junior patent. What the court, then, does decide is a very important, but a different question, to wit: If the discovery of the first inventor had been so far laid aside that it was in point of fact absolutely and irrevocably forgotten by him and by the whole world but for its recall to his memory by the

second invention, then the said inventor must be held equally meritorious as one who discovers a lost art or an unpatented and unpublished foreign invention, and like him entitled to a patent. Indeed, the circumstances in Gayler v. Wilder, [supra,] were much stronger than the present case; and while the court affirmed the legal proposition, they intimated the strongest doubt whether in that case the evidence was sufficient to warrant the inference which the jury then drew. There is no testimony in the present controversy from which one would be warranted in drawing a like conclusion; nor is there any testimony that the invention was even used by the public before Degener's application, except for about the period of eleven months before the date of Babcock's patent and his application—a period too short to debar him from the saving terms of the seventh section of the act of 1839. [5 Stat. 354.]

Upon the whole case, I am of opinion, and accordingly certify to the Hon. Joseph Holt, commissioner of patents, that there is no error in his decision in the premises; that his judgment is affirmed, and that a patent must be issued to Frederick O. Degener as prayed.