**IDE et al. v. TRORLICHT, DUNCKER & RENARD CARPET CO. et al.**

(Circuit Court of Appeals, Eighth Circuit.    April 21, 1902.)

No. 1,646.

1. PATENTS—COMBINATION OF OLD ELEMENTS.
A new combination of old elements, whereby an old result is attained in a more facile, economical, and efficient way, may be protected by a patent.

2. SAME—INDEPENDENT INVENTIONS PATENTABLE WHERE ADVANCE IN ART GRADUAL.
Where the advance toward perfection in an art consists of many intermediate steps, and several inventors form different combinations or improvements which score decided advances in the art and accomplish the desired result with varying degrees of success, each is entitled to his own combination, so long as it differs from those of his competitors, and does not include theirs.

3. SAME—ABANDONMENT—EVIDENCE OF INTENTION.
Clear evidence of an intention to dedicate an improvement to the public is indispensable to establish an abandonment under the patent law.

4. SAME—DATES OF THE FILING OF, AND OF PATENTS UPON, APPLICATIONS OF SAME INVENTOR PENDING AT THE SAME TIME.
Where each of several applications of the same inventor which subsequently ripen into patents describes the entire machine and the inventions claimed in all the applications, but no one of the applications claims any invention claimed in any of the others, and they are all pending at the same time, the respective dates of the patents and of the filings of the applications therefor are immaterial, and the applications and patents cannot be used to anticipate each other.

5. SAME—SPECIFICATION—DEDICATION OF INVENTIONS NOT CLAIMED.
A patentee dedicates to the public every combination and improvement apparent on the face of his specification which he does not point out and distinctly claim as his discovery or invention.

6. REISSUE—CLAIMS FOR IMPROVEMENTS DESCRIBED BUT NOT CLAIMED IN THE ORIGINAL PATENT VOID.
The insertion, in a reissued patent, of claims for inventions which were described, but which the patentee neither claimed nor intended to claim or to protect by the original patent, is unauthorized by the acts of congress, and such claims are void.

7. SAME—CERTAIN CLAIMS VALID, OTHERS VOID.
Claims 3 and 4 of letters patent No. 397,293 are valid.   Claims 3, 4 and 5 of reissued patent No. 11,730 are void.

8. LACHES—GENERAL RULE.
Under ordinary circumstances a suit in equity will not be stayed before, and will be stayed after, the time fixed by the analogous statute of limitations at law.  But if unusual conditions or extraordinary circumstances make it inequitable to allow the prosecution after a briefer, or to forbid its maintenance after a longer, period than that fixed by the statute, the chancellor will not be bound by it, but will determine the extraordinary case in accordance with the equities which condition it.

9. SAME—SUIT FOR INFRINGEMENT OF PATENT.
Mere delay in bringing a suit for infringement, unaccompanied by such deceitful acts or silence of the patentee, and by such circumstances, as amount to an equitable estoppel, will not warrant the application of the doctrine of laches to such a suit within the time fixed by statute for the commencement of the analogous action at law.

10. PATENTS—INFRINGEMENT—CHANGES OF FORM OF MECHANICAL ELEMENTS.
Mere changes in the form of a device, or of some of the mechanical elements of a combination, will not avoid infringement, where the prin-

ciple or mode of operation of the invention is adopted, except in those rare cases in which the form of the improvement or of the element changed is the distinguishing characteristic of the invention.

**11.** SAME—SUITS FOR INFRINGEMENT—COSTS TO BE EQUITABLY DIVIDED.

Where a suit for infringement is brought upon several patented claims, and the complainants succeed in obtaining relief upon some of the claims, but fail upon others, an equitable division of the costs should be made between the parties, because the defendants are not justly liable for the cost of litigating the claims upon which the complainants were entitled to no relief.

(Syllabus by the Court.)

Appeal from the Circuit Court of the United States for the Eastern District of Missouri.

This is an appeal from a decree which dismissed a bill for the infringement of claims 3, 4, and 5 of reissued letters patent No. 11,730, and claims 3 and 4 of letters patent No. 397,293. The former patent was for combinations of devices for the automatic oiling of certain stationary bearings of a horizontal engine, and the latter was for novel combinations of mechanical elements for the automatic lubrication of the bearing of the crosshead wristpin of such an engine. Letters patent No. 397,293 were issued to Albert L. Ide on February 5, 1889. On April 2, 1889, letters patent No. 400,682, the original of the reissued letters patent, were issued to Albert L. Ide for a lubricating device for steam engines. This patent contained three claims. Ide brought suit upon it for an infringement of the second and third claims. He failed because the circuit court of appeals of the Seventh circuit held that the combination described in the second claim was destitute of novelty, and that the third claim was so ambiguous that it was unintelligible. Chuse v. Ide, 89 Fed. 491, 496, 32 C. C. A. 260, 265. Thereupon the executors of the will of the patentee applied for, and obtained, the reissued letters patent No. 11,730, upon which this suit is based. This patent contains the three claims of the original patent and two more. Its second claim is the same as the second claim of the original patent. Its third claim describes the combination which Ide undoubtedly intended, but failed to describe in the third claim of the original patent, and the fourth and fifth claims of the reissued patent cover combinations that were neither claimed nor intended to be claimed by Ide when he procured his orginal patent. The second claim was adjudged void for lack of novelty and invention in Chuse v. Ide, supra. Its terms and legal effect are so similar to those of the third claim, which is here in suit, that it is set forth below with the claims which are to be considered, although the complainants seek no relief for its infringement in this case. The second, third, fourth, and fifth claims of the reissued patent are:

"(2) The combination, with a crank shaft and a crank disk, of an oil tank or basin beneath the disk, the side walls of which rise to a point above the lower edge of the disk, a housing or casing provided with an oil-receiving surface arranged in the same plane with the disk, a trough located within the housing in position to receive from the said oil-receiving surface fluid lubricant cast thereupon by the crank disk, a pipe leading from said trough to a bearing to be lubricated, and a valve in said passage, substantially as described.

"(3) The combination, with an engine crank shaft, a crank disk thereon, an oil tank or basin beneath the disk, a housing provided with an oil-receiving surface, and a bearing for the shaft provided with an oil cup or receptacle, a trough or receptacle located in position to receive from the surface of the housing lubricant cast upon the same by the disk, of a pipe communicating with said trough or receptacle and discharging into the oil cup upon the bearing, said oil cup being provided with an overflow pipe or passage leading into the housing, substantially as described.

"(4) In a self-lubricating steam engine, the combination with an engine crank shaft of a crank disk thereon, an oil tank or basin beneath the disk, a housing provided with an oil-receiving surface, a bearing for the shaft

provided with an oil cup or receptacle, a trough or receptacle located in position to receive from the surface of the housing lubricant cast upon the same by the disk, a pipe or passage communicating with said trough or receptacle and discharging into the oil cup upon the bearing, said oil cup being provided with an overflow pipe or passage leading into the housing, an inclosed or tubular portion communicating with the housing and extending horizontally therefrom, a horizontally traveling crosshead located within the horizontal tubular or inclosed portion, and a connecting rod uniting the crank disk and crosshead, said disk serving to cast oil from the tank or basin beneath the disk into the said tubular or inclosed portion to lubricate working parts of the engine within said tubular or inclosed portion, a passage being provided for returning the oil from the tubular or inclosed portion to the basin beneath the disk, substantially as described.

"(5) In the self-lubricating steam engine, the combination with an engine crank shaft of a crank disk thereon, an oil tank or basin beneath the disk, a housing provided with an oil-receiving surface, a bearing for the shaft provided with an oil cup or receptacle, a trough or receptacle located in position to receive from the surface of the housing lubricant cast upon the same by the disk, a pipe or passage communicating with said trough or receptacle and discharging into the oil cup upon the bearing, said oil cup being provided with an overflow pipe or passage leading into the housing, an inclosed or tubular portion communicating with the housing and extending horizontally therefrom, a horizontally traveling crosshead located within the horizontal tubular or inclosed portion, a wrist pin carried by the crosshead, and a connecting rod uniting the crank disk with the wrist pin, said disk serving to cast oil from the tank or basin beneath the disk into the said tubular or inclosed portion, to lubricate working parts of the engine within said tubular or inclosed portion, a passage being provided in the crosshead for conveying oil cast into the interior of the said tubular portion to the wrist pin, a second passage being provided for returning the oil from the tubular or inclosed portion to the basin beneath the disk, substantially as described."

The third and fourth claims of letters patent No. 397,293 read in this way:

"(3) The combination, with an engine crank shaft, a crank disk, connecting rod, and crosshead, of a casing or housing surrounding the disk, connecting rod, and crosshead, and having an oil tank or basin beneath the disk, a wrist pin in the crosshead engaged with the connecting rod, and an oil cup upon the said connecting rod communicating with the bearing surface of the wrist pin, said oil cup being located in position to receive the lubricant thrown upon the surface of the crosshead by the crank disk, substantially as described.

"(4) The combination, with a crank shaft, crank disk, connecting rod, and crosshead of hollow box form, of a casing or housing surrounding said disk, connecting rod, and crosshead, and having an oil tank or basin located beneath the crank disk, a wrist pin upon the crosshead engaging the connecting rod, and an oil cup upon the connecting rod communicating with the bearing surface of the wrist pin, said hollow crosshead being provided upon its upper wall with a depending projection located over the said oil cup, substantially as described."

The defendants interposed the usual defenses of the invalidity of the patents and of lack of invention, and upon the final hearing the court below dismissed the bill because in its opinion the reissued patent was void on account of the delay of its owner in making application for it, and because the defendants had not infringed the third and fourth claims of patent No. 397,293.

Charles A. Brown (George L. Cragg, A. Miller Belfield, Wilbur F. Boyle, H. S. Priest, and F. W. Lehmann, on the brief), for appellants.

Ephraim Banning (Edward C. Craig, James W. Craig, and Thomas A. Banning, on the brief), for appellees.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

SANBORN, Circuit Judge, after stating the case as above, delivered the opinion of the court.

In the natural and logical order of consideration of the usual issues presented in a case involving the alleged infringement of patented monopolies, the first question which presents itself is the validity of the patents upon which the suit is based. Both of the patents here in issue are attacked upon the ground that there was no novelty in the devices they described, and that the production of the improvements whose use they secured called for no exercise of the inventive faculty. The reissued patent is also assailed upon the additional grounds that it is not for the same invention as was the original upon which it was founded; that the application for it was too late; and that it was secured by fraud. As a discussion of the novelty and patentability of the devices portrayed by the two patents in suit involves an examination of the state of the art, the objections to their validity for want of novelty and invention will be first considered. The basic claims of the two patents are those numbered 3 in each of them. The other claims in suit are amplifications of these two,—combinations of the devices described in these claims with other mechanical elements,— and they will be laid aside for consideration after the validity of the two claims numbered 3 has been determined.

These two claims relate to improvements in the same art,—the art of automatically lubricating the bearings of operating machinery. They both describe and claim devices for automatically oiling the bearings of horizontal engines by the use of centrifugal force to throw the lubricant from the periphery of a revolving disk upon a higher surface, whence it may be gathered and conducted by the force of gravity to the bearings to be oiled. They have these mechanical elements in common: An engine crank shaft, a crank disk thereon, an oil tank or basin beneath the disk, and a housing surrounding the disk. Here the similarity of their combinations ceases, and in the purposes to which they are applied, and in the other mechanical elements by which they accomplish their ends, they are radically different. The desideratum of the combination of claim 3 of the reissued patent is to lubricate those bearings of a horizontal engine, such as that of the crank shaft, which bear a fixed local relation to the revolving disk. That of the combination of claim 3 of patent No. 397,293 is to oil the constantly reciprocating bearing of the crosshead wrist pin. Hence the former combination embraces a trough or receptacle to receive the oil from the interior surface of the housing above the disk, a pipe to lead the lubricant from this trough through the housing to the bearing to be oiled, an oil cup upon the bearing to receive the lubricant, an overflow pipe or passage to lead the oil back through the housing again to the basin beneath the disk. In the operation of this device the centrifugal force throws the lubricant which adheres to the disk as its periphery revolves through the oil in the basin beneath it upon the interior surface of the housing above it, whence it trickles down this surface into the trough prepared to catch it, and is led by a tube from this trough through the housing to the oil cup on the bearing to be lubricated, and thence by an overflow pipe or passage back within the housing, so that it may return by the force of gravity

to the oil tank below the disk from whence it came.    The combination of claim 3 of patent No. 397,293, on the other hand, embraces a hollow, box-shaped crosshead, the lower surface of whose upper wall is open to receive the lubricant thrown from the disk, a connecting rod and a wrist pin therein, an oil cup on the connecting rod communicating by means of a passage with the bearing surface of the wrist pin, and a casing, or housing surrounding the disk, the connecting rod and the crosshead, so that oil deposited upon its interior surface will flow back into the reservoir beneath the disk.    In the operation of this improvement the centrifugal force throws the lubricant which adheres to the disk as its periphery revolves through the oil in the tank beneath it upon the upper interior surface of the constantly reciprocating crosshead, whence it drops into the oil cup on the head of the connecting rod and flows down through the passage therein upon the bearing surface of the wrist pin.    A single glance at the two combinations is enough to suggest that the problem of automatically oiling a bearing in a constantly reciprocating crosshead was much more grave, and its solution was much more difficult, than that of lubricating a bearing which constantly has the same local relation to the disk which distributes the oil.    Bearing in mind now the difference between the two combinations and between the objects they were contrived to attain, let us examine the devices that are alleged to anticipate them.

Several patents, including No. 299,731 to Peter Brotherhood, dated June 3, 1884, and No. 246,258 to H. Herman Westinghouse, dated June 3, 1884, which shed no light upon the state of this art, and have no relevancy to the issues in this case, have been cited and examined. The latter patent is the only one which discloses any device whatever for the automatic lubrication of the bearing of the crosshead wrist pin in an engine before Ide's invention, and the contrivance which this patent portrays neither uses the mechanical means nor avails itself of the principle of Ide's combination.    It is nothing but a tank of oil at the foot of a hollow upright connecting rod or pitman that is provided with a valve.    As the rod descends the crank is immersed in the lubricant and the bearing of its lower end is oiled.    At the same time oil is forced into it through an opening and held there by the valve.    Successive strokes of the rod pump the oil into it in this way until it reaches the upper end of the rod, when it flows out through another hole and lubricates the bearing by which the connecting rod or pitman is attached to the piston.    This patent describes no disk, no hollow crosshead, no use of the centrifugal force,—nothing suggestive of Ide's improvement,—and it will receive no farther consideration.

In patent No. 24,914, August 2, 1859, to P. F. Aertz, in No. 78,895, June 7, 1868, to Reynolds & Bachelder, and in English patent 352, March 8, 1855, disks revolving through reservoirs beneath them, and taking lubricants which are gathered from the upper portions of their peripheries by scrapers and conducted by means of troughs, tubes, or their equivalents to bearings which sustain a constant local relation to the disks, and thence back to the tanks, are clearly described.

In English patent No. 852, October 7, 1856, to William Joseph Cur-

tis, there is a description of a disk attached to the axle of a railway carriage or engine revolving through a lubricant in a tank beneath it and throwing the liquid by centrifugal force upon the interior surface of a box above it, whence it is led by suitable troughs to the bearing of the axle to lubricate it.

Letters patent No. 65,328, June 4, 1867, to John Bachelder, shows a shaft, a plate or a disk thereon, a dripping pan or oil tank beneath the disk, a housing or box provided with an oil-receiving surface, a bearing for the shaft with a hanger or oil receptacle above it, a trough beneath the upper interior portion of the housing which both receives from the surface above it the lubricant cast there by the disk and conducts it to the receptacle over the bearing, whence it runs down upon the bearing and through a hole beneath the shaft into the tank beneath the disk. Bachelder describes the operation of this device in this way:

"When the shaft is driven at the requisite speed, the periphery of the plate, running in clean oil placed in the dripping pan, carries it up by centrifugal force above and into the conductor, which delivers it in the cavity in the cap of the hanger. The oil then, after performing its office of lubricating, passes out at the ends of the bearing in the usual way, or may pass through a hole under the shaft into the larger part of the dripping pan."

Here is a clear description of the principle of Ide's combination, of the application of the centrifugal force generated by a revolving disk to the automatic lubrication of bearings which have a fixed local relation to the disk. Here is a perfect word picture of a combination of all the mechanical elements or of their equivalents which Ide claimed to have devised for the operation of his principle. This patent to Bachelder is a complete anticipation of Ide's improvement. It left him no principle to conceive, no improvement to invent, no new combination to form in reaching the device which he described and sought to secure by claim 3 of his reissued patent, and that claim is void for want of novelty and for a lack of the exercise of the inventive faculty in conceiving the combination it describes. It differs in no essential particular from the second claim of the original patent No. 400,682, which met the same fate at the hands of the circuit court of appeals of the Seventh circuit in Chuse v. Ide, 89 Fed. 491, 496, 497, 32 C. C. A. 260, 265, 266.

The improvement described in claim 3 of patent No. 397,293, on the other hand, is of a very different character, and it was conceived to solve a far more difficult problem. It was one thing to copy some of the improvements described in the patents which have been reviewed and to form from them a combination to automatically lubricate bearings which constantly bore a fixed local relation to the revolving disk. It was another and a far more serious undertaking to devise a combination of mechanical elements which would successfully utilize the centrifugal force of the revolving crank disk so as to automatically lubricate the bearing of the crosshead wrist pin while it was subjected to the constantly reciprocating motion of the crosshead, and while its local relation to the revolving disk was changing every instant. The patents that have been considered, the general history of the art to which they relate, and our common knowledge of

the operation of machinery, demonstrate the fact that the automatic lubrication of the bearing of this wrist pin upon the connecting rod while it was in continuous motion must have been an end long sought by mechanics and manufacturers. No one, however, attained it save by the crude and impractical method of plunging the end of the connecting rod or pitman and its bearing in an upright engine into a tank of oil beneath it, described in the patent to Westinghouse,—a method inapplicable to horizontal engines and free from any suggestion of the simple, ingenious, and effective device of Ide. No one before him ever utilized the centrifugal force generated by a disk revolving in a basin of oil to automatically lubricate a bearing whose local relation to the disk was constantly changing. No one before Ide ever attained the end of automatically and continuously oiling the bearing of the crosshead wrist pin of a horizontal engine while it was in operation, and no one before him ever made or used the combination of claim 3 of his patent No. 397,293 for that purpose. The improvement embodied in that combination was novel in the end which it attained, novel in its mode of operation, and novel in the combination of mechanical elements of which it was composed. It marked a perceptible advance in the art to which it relates, and the presumption which the patent raises, the failure of manufacturers and of mechanics skilled in the art for so many years to reach the object which it attained, its obvious utility, its simplicity, and the cleverness of its conception, persuasively urge to the result that to him who devised it the title of inventor ought not to be denied, and such is the conclusion of this court.

While this improvement is by no means a primary invention, it scores one of those intermediate steps in the gradual progress of a useful art towards perfection which are evidenced by the great majority of patented inventions, and it falls within the established rules that a new combination of old elements, by which an old result is attained in a more economical and efficient way, may be protected by a patent (National Hollow Brake-Beam Co. v. Interchangeable Brake-Beam Co., 106 Fed. 693, 707, 45 C. C. A. 544, 557; Seymour v. Osborne, 11 Wall. 516, 542, 20 L. Ed. 33; Gould v. Rees, 15 Wall. 187, 189, 21 L. Ed. 39; Thomson v. Bank, 53 Fed. 250, 252, 3 C. C. A. 518, 520, 10 U. S. App. 500, 509), and that where the advance in the art is gradual, and several inventors make valuable improvements and form different combinations, which accomplish the desired result with varying degrees of success, each is entitled to his own combination, so long as it differs from those of his competitors and does not include theirs (National Hollow Brake-Beam Co. v. Interchangeable Brake-Beam Co., 106 Fed. 693, 712, 45 C. C. A. 544, 563; Railway Co. v. Sayles, 97 U. S. 554, 556, 24 L. Ed. 1053; McCormick v. Talcott, 20 How. 402, 405, 15 L. Ed. 930; Stirrat v. Manufacturing Co., 61 Fed. 980, 981, 10 C. C. A. 216, 217, 27 U. S. App. 13, 42; Griswold v. Harker, 62 Fed. 389, 391, 10 C. C. A. 435, 438, 27 U. S. App. 122, 150; Adams Electric Co. v. Lindell Ry. Co., 77 Fed. 432, 440, 23 C. C. A. 223, 231, 40 U. S. App. 482, 498). The combination of claim 3 of patent No. 397,293 was new and it was the product of the intuitive genius of an inventor.

Counsel for the defendants resist the logical effect of this conclusion, and still deny the liability of their clients, on the ground that this patent was anticipated and rendered void by other patents issued to the same inventor, and by the applications upon which these patents were founded. They first cite patent No. 321,726, dated July 7, 1885. But the improvement there described neither anticipates the combination of claim 3 of this patent nor has any relevancy to the issue under consideration. It lacks its principle,—the use of centrifugal force,—and it wants its chief element,—the revolving disk. It contemplates the lubrication of the bearing of the crosshead wrist pin, not by the automatic action of machinery, but by the use of a cup located on the outside of the frame of the engine and supplied by hand with oil which is led through the housing and through the upper wall of the crosshead to an oil cup on the connecting rod over the bearing of the wrist pin.

Counsel next call attention to two applications for patents filed on February 20, 1888, upon which patent No. 396,209 was issued on January 15, 1889, and patent No. 400,682 was issued on April 2, 1889. The specifications of these applications and patents described all the elements of the improvement secured by the claim under consideration. But they did not portray its mode of operation, nor present any claim for it as an invention. Its principle was first described, and the claim to it as an invention was first made, in the application upon which the patent now under consideration was based, which was filed on August 4, 1888, and which ripened into a patent on February 5, 1889. The argument of counsel for the defendants is, however, that this claim and patent are void because the prior applications of February 20, 1888, show that the combination secured by this patent had been invented prior to that date, and because the fact that Ide did not secure this improvement by the patents based upon those applications estopped him from securing it by this patent based upon a later application. But is this contention well founded either in logic or in law? Concede that the applications of February 20, 1888, prove that Ide had invented the improvement here under consideration before those applications were filed. There was no law which required him to apply for a patent upon his invention as soon as he made it. The acts of congress gave him the right to apply for and to obtain a patent upon his combination at any time after he conceived it, provided only that his invention had not been "in public use or on sale for more than two years prior to his application," and that it was not "proved to have been abandoned." Rev. St. § 4886. There was no evidence of any prior use or sale of this improvement. Clear evidence of an intention to dedicate an improvement to the public is indispensable to establish an abandonment. There was no evidence of an abandonment at the hearing of this case, and the patent in suit and the application upon which it is based are persuasive proof that Ide never intended to dedicate, and never did dedicate, the improvement they secure to the public. Mast, Foos & Co. v. Dempster Mill Mfg. Co., 27 C. C. A. 191, 195, 82 Fed. 327, 331; Woolen Co. v. Jordan, 7 Wall. 583, 607, 19 L. Ed. 177; Adams v. Jones, 1 Fed. Cas. 126, 127 (No. 57); Babcock v. Degener, 2 Fed. Cas. 293, 297 (No. 698); Jones v. Sewall, 13 Fed. Cas. 1017, 1027 (No.

7,495); McMillin v. Barclay, 16 Fed. Cas. 302, 306 (No. 8,902); Pitts v. Edmonds, 19 Fed. Cas. 751, 757 (No. 11,191).

If the device had been described, but had not been claimed in applications filed and patents procured eight years before the claim for it was presented to the patent office, as in James v. Campbell, 104 U. S. 356, 379, 382, 26 L. Ed. 786, that fact might have constituted an irrevocable dedication of it to the public, which would have estopped the claimant from successfully pressing it. But the claim for this improvement was presented seven months after it was described in the earlier applications. The application for a patent upon it was pending in the patent office five months before the patents based upon those earlier applications were issued, and the patent upon it was issued within one month after the patent upon one of these earlier applications, and nearly two months before the patent upon the other. In this state of the case, the dates of the applications, the dates when they were filed, and the dates of the patents are immaterial to the determination of the rights of the patentee. Where each of several applications, which subsequently ripen into patents to the same inventor, describes an entire machine and the inventions claimed in all of the applications, but no one of the applications claims any invention claimed in any of the others, and they are all pending at the same time, the respective dates of the applications and of the patents and the dates when the applications were filed are immaterial, and the applications and the patents cannot be used to anticipate each other. Walk. Pat. § 180; Westinghouse Electric & Mfg. Co. v. Dayton Fan & Motor Co. (C. C.) 106 Fed. 724, 726; Suffolk Manufacturing Co. v. Hayden, 3 Wall. 315, 318, 18 L. Ed. 76; Graham v. McCormick (C. C.) 11 Fed. 859; Graham v. Manufacturing Co. (C. C.) 11 Fed. 138, 141. The result is that none of the other applications of or patents to Ide impeach or avoid the patent under consideration, and claim 3 of that patent must be sustained.

Claim 4 of patent No. 397,293 consists of the combination of claim 3 plus a depending projection located over the oil cup on the connecting rod. As the combination of claim 3 was novel and patentable, that combination, together with the depending projection, was so, and claim 4, which is attacked on the same grounds as claim 3, must be sustained for the same reasons which induced us to declare the validity of that claim.

The fact that a single patent (No. 276,047, April 17, 1883, to William R. Jenkins) was cited as an answer to this claim has not been overlooked. It describes an annular oil chamber around the hub of a car wheel, with conical projections from the periphery of this chamber opposite holes through the hub to the axle. Oil is deposited in this chamber, and, as the wheel revolves, it follows these projections to the holes, and thence through them to the axle. This patent is undoubtedly cited because it shows a conical projection, but that is not the improvement protected by the fourth claim of patent No. 397,293. It is the combination of that projection with the revolving disk, the hollow crosshead, the reciprocating wrist pin, and the other elements described in the claim, that Ide secured by this claim. These essential

elements, as well as the mode of operation of Ide's improvement,—the throwing of oil by centrifugal force from the periphery of a revolving disk to a bearing which is constantly changing its local relation to the disk,—are not found in the device of Jenkins, and for this reason this patent has no relevancy to the issue of the validity of the claim it is cited to anticipate, and it is here dismissed.

Claims 4 and 5 of the reissued patent No. 11,730 must fall with claim 3 of that patent,—the foundation claim upon which they rest. Claim 4 describes the combination of claim 3 plus an inclosed or tubular portion of the housing, a crosshead and connecting rod therein, and a passage to lead the oil thrown by the revolving disk upon the interior surface of the housing back into the reservoir beneath the disk. Claim 5 consists of the combination of claim 4 and a passage in the crosshead to conduct the oil from the interior of the tubular portion of the housing to the wrist pin. These claims were not a part of the original patent upon which the reissue is founded. They appeared for the first time in the application for the reissued patent which was filed on December 6, 1898. In so far as they describe the combination of claims 3 and 4 of patent No. 397,293 to automatically lubricate the bearing of the crosshead wrist pin, they are anticipated and rendered void by that patent, which was issued to the same inventor before the original patent on which this reissue is based was granted. National Hollow Brake-Beam Co. v. Interchangeable Brake-Beam Co., 106 Fed. 693, 708–710, 45 C. C. A. 544, 559–562. In so far as these claims disclose any other combination, they are anticipated and avoided by the patents to Bachelder and others reviewed in an earlier part of this opinion, which proved so fatal to claim 3 of this patent.

Moreover, these claims are void because they expand the monopoly which the inventor secured by his original patent, and because there was unreasonable delay in making application for them. A specious argument is presented to sustain them on the ground that they do not expand, but, rather, restrict the monopolies which Ide attempted to protect by claims 2 and 3 of the original patent, because they consist of the combinations of those claims restricted by additional elements, and it is earnestly contended that they should be sustained upon this ground. Crown Cork & Seal Co. of Baltimore City v. Aluminum Stopper Co. of Baltimore City, 108 Fed. 845, 859, 860, 48 C. C. A. 72, 86, 87; Electrical Accumulator Co. v. New York & H. R. Co. (C. C.) 50 Fed. 81; Eames v. Andrews, 122 U. S. 40, 7 Sup. Ct. 1073, 30 L. Ed. 1064. But this argument is based on the assumption that claims 2 and 3 of the original patent describe patentable inventions,—an assumption, which, as we have seen, is not in accordance with the fact. The improvements which claims 2 and 3 attempt to describe were neither novel nor were they the product of the intuitive genius of the inventor. They secured no invention or discovery, and the result is that claims 4 and 5, which follow them, do not restrict the scope of the monopolies protected by the original patent, because no such monopolies were saved thereby; but they claim combinations no part of which was ever protected by the original patent upon which the reissue which contains them was based. Moreover, the record conclusively shows that when the patentee obtained his original patent he

not only did not claim, but he did not intend to claim, the combinations. now described in these new claims of the reissued patent. The acts of congress require an inventor, before he procures his patent, to "point out and distinctly claim the part, improvement, or combination which he claims as his invention or discovery" (Rev. St. § 4888), and his specifications and claims constitute a dedication to the public of every invention they disclose but do not claim. Adams Electric Ry. Co. v. Lindell Ry. Co., 23 C. C. A. 223, 241, 242, 77 Fed. 432, 451, 452. Ide, therefore, in so far as he did not secure them by patent No. 397,293, issued about two months before, abandoned these combinations to the public in 1889, when he procured his original patent No. 400,682. On December 6, 1898, more than nine years thereafter, application was first made to secure a monopoly of the use of these improvements by means of this reissued patent. This delay might be excused by the litigation involving the original patent if it appeared that the patentee had intended to secure these improvements by that patent and had failed to do so by reason of a defective or insufficient specification, or by claiming as his invention more than he had a right to claim. Rev. St. § 4916. But the entire record, and especially the specifications and claims of the two patents 397,293 and 400,682, whose applications were pending in the patent office at the same time, leave no doubt that Ide never intended to claim or protect by the latter patent the improvements described in claims 4 and 5 of the reissued patent, and, because these claims describe inventions different from any which the patentee saved or sought to protect by his original patent, their insertion in the reissue was unauthorized by the law, and they are void. The introduction in a reissued patent of claims for inventions which are described, but which the patentee neither claimed nor intended to claim by the original patent, is unauthorized by the acts of congress, and such claims are void. Topliff v. Topliff, 145 U. S. 156, 166–171, 12 Sup. Ct. 825, 36 L. Ed. 658; Hubel v. Dick (C. C.) 28 Fed. 132, 137, 138; Carpenter Straw-Sewing Mach. Co. v. Searle, 60 Fed. 82, 84–86, 8 C. C. A. 476, 478–480.

The sum of the whole matter concerning the validity of these claims is that claims 3, 4, and 5 of reissued patent No. 11,730 are void, and claims 3 and 4 of letters patent No. 397,293 are valid.

The next question for consideration is the measure of the recovery to which the complainants are entitled for the alleged infringement of the two valid claims. Counsel for the defendants insist that no relief can be granted to the complainants, because they have been guilty of laches in prosecuting their suit, and because the defendants are innocent of the charge of infringement. The charge of laches is conditioned by these facts: This patent was issued on February 5, 1889. The defendants in this case include the manufacturers of the engine which is alleged to infringe and a purchaser thereof. On May 23, 1894, Ide notified the manufacturers that they were infringing upon this patent. On July 14, 1899, the executors of Ide's will exhibited this bill. In the meantime a spirited litigation had been conducted between Ide and the manufacturers over the former's claims under other patents. The statute of limitations of the state of Illinois,—the state in which the defendants have committed their alleged trespasses,—

bars the commencement of actions for the recovery of damages for infringement five years after the damages accrue. Hurd's Rev. St. Ill. 1899, p. 1119, § 15.

But there is no rule of law, of equity, or of morals that requires a patentee to sue infringers upon all the patents he owns at the same time, or that deprives him of the equitable relief to which he would otherwise be entitled because he has failed to do so. And while courts of equity usually apply the doctrine of laches by analogy to the statute of limitations of similar actions at law, that rule has no application to this suit, because the trespasses of the defendants for which the complainants now seek relief have been continuous and repeated, and are still continuing, and no bar to a recovery of all the damages which have resulted from them within five years of the commencement of this suit, or to the issue of an injunction to prevent their continuance, has arisen even under the statute of Illinois. The doctrine of laches is an equitable principle, which is applied to promote, but never to defeat, justice. Under ordinary circumstances a suit in equity will not be stayed before, and will be stayed after, the time fixed by the analogous statute of limitations at law. But if unusual conditions or extraordinary circumstances make it inequitable to allow the prosecution after a briefer, or to forbid its maintenance after a longer, period than that fixed by the statute, the chancellor will not be bound by the statute, but will determine the extraordinary case in accordance with the equities which condition it. Kelley v. Boettcher, 85 Fed. 55, 62, 29 C. C. A. 14, 21. There are no unusual circumstances or conditions in this case which appeal to a court of equity to stay this suit while a similar suit is not barred by the statutes of Illinois. Unreasonable delay and the deceitful acts or silence of a patentee which induce an infringer to incur expenses or to become liable to losses and damages which he would not otherwise have suffered may sometimes justly induce a court of equity to stay his suit for an infringement or for an accounting before the time fixed by the analogous statute of limitations has expired. But delay, unaccompanied by such deceitful acts or silence of the patentee, and by such facts and circumstances as practically amount to an equitable estoppel, will warrant no such action. It is no answer to an application for an injunction to restrain a defendant from committing waste by cutting trees upon the owner's land that, because the latter has taken no steps to prevent the wrongdoer from cutting one half of the trees, he has thereby acquired a right to cut the other half. Attorney General v. Eastlake, 11 Hare, 205, 228. And it is no defense to a suit for an injunction and an accounting on account of the continuing trespasses of an infringer that the latter has been trespassing on the rights of the patentee for years with impunity. Menendez v. Holt, 128 U. S. 514, 523, 9 Sup. Ct. 143, 32 L. Ed. 526; McLean v. Fleming, 96 U. S. 245, 253, 24 L. Ed. 828; Price v. Steel Co. (C. C.) 46 Fed. 107, 108; New York Grape Sugar Co. v. Buffalo Grape Sugar Co. (C. C.) 18 Fed. 638, 646; Gilmore v. Anderson, 38 Fed. 846, 848; Brush Electric Co. v. Electric Imp. Co. (C. C.) 45 Fed. 241, 243; Taylor v. Spindle Co., 22 C. C. A. 203, 206, 75 Fed. 301, 304; Bragg Mfg. Co. v. City of Hartford (C. C.) 56 Fed. 292, 294.

Finally it is insisted that the engines of the defendants do not infringe upon the third and fourth claims of the patent under consideration. This contention is unworthy of extended consideration. Its only foundation is that the oil cup or receptacle in the upper end of the passage through the connecting head to the crosshead wrist pin bearing is a flaring tunnel-shaped cup, with its spout inserted in the passage, in the patent, while the defendants' substitute for it is a flaring tunnel-shaped mouth to the passage sunk in the connecting rod strap and in the connecting rod, and the "depending protection" of the patent over this oil cup is described as a pointed depending projection, while the substitute for it used by the defendants consists of the depending end of a bolt, with a nut upon it which not only performs the function of Ide's depending projection, but also accomplishes another purpose. These are distinctions without differences. A depressed oil cup used in the same place and accomplishing the same purpose as a raised oil cup,—the purpose of collecting and leading the oil to the same passage,—is the mechanical equivalent of, and the same thing as, the raised oil cup, in the view of the law of patents. And a depending projection consisting of the end of a bolt with a nut upon it used in the same place, and performing the same function, as the depending projection of the patent,—the function of gathering the oil from the surface above it and dropping it into the oil cup beneath it,—is the mechanical equivalent of, and the same thing as, the patented projection, in the eyes of that law. Parties cannot escape infringement by such slight and useless variations in the forms of elements of patented combinations. Mere changes in the form of a device, or of some of the mechanical elements of a combination, will not avoid infringement, where the principle or mode of operation is adopted, except in those rare cases where the form of the improvement or of the element changed is the distinguishing characteristic of the invention. National Hollow Brake-Beam Co. v. Interchangeable Brake-Beam Co., 106 Fed. 693, 711, 45 C. C. A. 544, 562; Watch Co. v. Robbins, 64 Fed. 384, 396, 12 C. C. A. 174, 187; New Departure Bell Co. v. Bevin Bros. Mfg. Co. (C. C.) 64 Fed. 859.

The form of the elements which the defendants have changed was not the essence of this invention. Its principle was the application of the centrifugal force generated by a disk on a crank shaft revolving in a tank of oil to the automatic lubrication of the bearing of a crosshead wrist pin of an engine. The means which it secured to make this application consisted of a combination of the revolving disk secured to the crank shaft, the oil tank beneath it, the hollow crosshead, with the lower surface of its upper wall open to receive the lubricant thrown by the revolving disk, the depending projection upon this surface, the oil cup on the connecting rod, and the passage beneath it to lead the lubricant to the bearing of the wrist pin. This mode of operation and every element of the patented combination which Ide invented to utilize it the defendants have boldly appropriated, and they cannot be permitted to escape from the natural and legal effect of their acts.

The net result of this investigation is that the complainants succeed upon claims 3 and 4 of letters patent No. 397,293, and they fail upon

claims 3, 4, and 5 of the reissued patent. Where a suit is brought upon several claims of one or more patents, and the complainants succeed in obtaining relief upon some of the claims, but fail to recover upon others, an equitable division of the costs, proportioned to the expense of litigating the respective claims, should be made, because the defendants are not justly liable for the costs of litigating those claims upon which the complainants were entitled to no relief. Wilcox & Gibbs Sewing Mach. Co. v. Merrow Mach. Co., 93 Fed. 206, 35 C. C. A. 269; Thomson-Houston Electric Co. v. Elmira & H. Ry. Co. (C. C.) 71 Fed. 886; Albany Steam Trap Co. v. Felthousen (C. C.) 20 Fed. 633, 640.

The decree below must be reversed, the appellants may recover one-half of their costs in this court, and the case must be remanded to the circuit court, with directions to dismiss the bill as to the three claims of the reissued patent No. 11,730, and to enter the usual decree for an injunction and an accounting upon claims 3 and 4 of letters patent No. 397,293, without costs to either of the parties to the suit up to the time of the entry of the decree; and it is so ordered.